UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 13-61979-CIV-BLOOM/VALLE

**CERTAIN UNDERWRITERS AT LLOYDS,
LONDON SUBSCRIBING TO POLICY NO.
SA 10092-11581**,

     Plaintiff,
v.

**WAVEBLAST WATERSPORTS, INC.**,
**WAVEBLAST WATERSPORTS II, INC.**,
**CASEY FULLER**,
**JEFFREY ZABADAL**,
**SANDS HARBOR, INC.**, and
**SCOTTSDALE INSURANCE COMPANY**,

     Defendants.
_____/

## ORDER

THIS CAUSE is before the Court on Defendant Sands Harbor, Inc.'s Motion for Summary Judgment, ECF No. [84], joined by Defendant Scottsdale Insurance Company, *see* ECF No. [87]; Plaintiff's Partial Motion for Summary Judgment, ECF No. [86]; and Defendants Scottsdale Insurance Company and Sands Harbor, Inc.'s Motions to Strike, ECF Nos. [93], [95]. The Court is fully advised after careful review of the record, the parties' briefs, and the applicable law.

    **I.**    **Background**

Plaintiff filed this action on September 11, 2013, seeking a judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, that Plaintiff owes no duty to defend or indemnify Defendants Waveblast Watersports Inc., Waveblast Watersports II, Inc., Casey Fuller, Jeffrey Zabadal, Sands Harbor, Inc., or Scottsdale Insurance Company, or to provide insurance coverage or defense of claims made against any or all of the parties of this case by Steven

Miskell, as administrator of the Estate of Kathleen Miskell, deceased, or individually, for bodily injury, wrongful death or other damages, in any lawsuits which may be filed within the jurisdiction of this Court arising out of Kathleen Miskell's death during a parasailing accident. Defendants Waveblast and Waveblast II filed counterclaims against Plaintiff, requesting that the Court issue a declaratory judgment that Plaintiff has the duty to defend and indemnify them in the underlying lawsuit. *See* ECF No. [65] at 8. Defendant Sands Harbor filed a counterclaim against Plaintiff, stating two counts—the first for declaratory relief that Plaintiff has the duty to defend and indemnify it in the underlying lawsuit, *see* ECF No. [66] at 13, and the second for breach of contract for Plaintiff's failure to defend and has requested attorney's fees. *Id.* at 14-15.

Plaintiff is the insurer of a policy, number SA10092-11581, pursuant to which Defendant Waveblast is the named insured, and Defendant Sands Harbor is named as an additional insured. *See* ECF No. [86-2] at 1, 4. Defendant Scottsdale is the insurer of a policy, number BCS0025806, pursuant to which Defendant Sands Harbor is the named insured. *See* ECF No. [86-5] at 4. The underlying complaint alleges:

> 47. On or about August 15, 2012, Stephen Miskell and Kathleen Miskell were invitees at the Sands Harbor Hotel and Resort and went to that facility because it offered and/or advertised recreational parasail excursions from its location.
>
> 48. Upon arriving at the Defendant, Sands Harbor Resort, Stephen Miskell and Kathleen Miskell were offered a parasailing excursion by Defendants, Sands Harbor, Waveblast II and Waveblast. Due to an oncoming storm, Stephen Miskell and Kathleen Miskell were told to wait at the bar area of the Sands Harbor Resort until the storm passed.
>
> 49. Sometime later, the storm passed and Defendants, Sands Harbor, Waveblast II and/or Waveblast undertook to provide a tandem parasail excursion to Stephen Miskell and Kathleen Miskell. The excursion left from a marina owned and operated by Defendant Sands Harbor, and the marina is also adjacent to the bar area of Sands Harbor. Waveblast II and/or Waveblast had an office in the Sands Harbor Hotel as well. The excursion was to occur in the navigable waters offshore from Pompano Beach, Broward County, Florida, utilizing

>       Defendants, Sands Harbor, Waveblast II and/or Waveblast's parasail vessel, the vessel's crew, and its/their parasail equipment. The parasail apparel, appurtenances, etc. ("the equipment") were provided, distributed and/or sold by Defendants, Custom Chutes and/or Waterbird and/or Sport Chutes. Sport Chutes and/or Custom Chutes served as Waterbird's distributor in the U.S. and sold Waterbird products including parasail harnesses.
>
>       50. During the Parasail excursion, while the parasail containing Stephen Miskell and Kathleen Miskell was aloft and being towed by the Defendants, Waveblast II and/or Waveblast parasailing vessel, and at which time the parasail was at a height above the surface of the water of 150' or more, the harness in which Kathleen Miskell was secured malfunctioned and/or failed, and Kathleen Miskell plummeted into the water.
>
>       51. The fall from the parasail into the water as aforesaid resulted in the death of Kathleen Miskell, Plaintiff's decedent.

ECF No. [82-1] at 11-12.

The Court granted Plaintiff's Motion for Entry of Final Default Judgment as to Defendants Fuller and Zabadal, ruling that no coverage exists for these Defendants, and Plaintiff has no duty to defend or indemnify these Defendants in the underlying lawsuit. *See* ECF No. [35].

## II. Discussion

### a. Motion to Strike

Defendants Scottsdale Insurance Company and Sands Harbor move to strike Plaintiff's Response in Opposition to Defendant Scottsdale's Motion for Summary Judgment, ECF No. [88], on the grounds that "Lloyds' 'response' is nothing more than a second, successive motion for summary judgment on the issue of priority of coverage." ECF No. [93] at 4.

"The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Granting motions to strike are generally disfavored. *Lake Lucerne Ass'n v. Dolphin Stadium Corp.*, 801 F. Supp. 684, 694 (S.D. Fla. 1992) (citing *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677

F.2d 1045, 1057 (5th Cir. 1982)).  However, Rule 12(f) only applies to "pleadings," defined by Fed. R. Civ. P. 7(a) to include only a complaint, an answer to a complaint, an answer to a counterclaim, an answer to a crossclaim, a third-party complaint, an answer to a third-party complaint, and a reply to an answer (if the court orders one).  *See Vanderwall v. United Airlines, Inc.*, No. 14-CIV-60256, 2014 WL 4755219, at *1 (S.D. Fla. Sept. 23, 2014) (citing cases). While Plaintiff seemingly concedes coverage exists, the Response addresses the construction of the policies at issue and is filed in accordance with the Federal Rules.  Accordingly, the Motions to Strike are denied.

      b. **Summary Judgment Motions**

Plaintiff has moved for Partial Summary Judgment—seeking a ruling on coverage priority with Defendant Scottsdale for Defendant Sands Harbor's defense and/or indemnity. Defendant Sands Harbor has moved for Final Summary Judgment—seeking a ruling that Plaintiff has a duty to defend and indemnify Defendant Sands Harbor with respect to the claims stated in the underlying lawsuit.  Defendant Scottsdale has adopted Defendant Sands Harbor's Motion.

      i. **Legal Standard**

The parties have filed and briefed cross-motions for summary judgment on the same legal issue—Plaintiff's coverage with respect to Defendant Sands Harbor and priority with respect to Defendant Scottsdale.  A district court's disposition of cross-motions for summary judgment employs the same legal standards applied when only one party files a motion.  *See United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984).  "Cross-motions may, however, be probative of the absence of a factual dispute where they reflect general agreement by the parties as to the

controlling legal theories and material facts." *S. Pilot Ins. Co. v. CECS, Inc.*, __ F. Supp. 3d __, __, 2014 WL 4977805, at *2 (N.D. Ga. 2014) (citing *Oakley*, 744 F.2d at 1555-56).

A party may obtain summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties may support their positions by citation to the record, including inter alia, depositions, documents, affidavits, or declarations. Fed. R. Civ. P. 56(c). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 477 U.S. at 247-48). The Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in the party's favor. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which a jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. Further, the Court does not weigh conflicting evidence. *See Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007) (*quoting Carlin Comm'n, Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986)).

The moving party shoulders the initial burden of showing the absence of a genuine issue of material fact. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). Once this burden is satisfied, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., L.L.C.*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, "the non-moving party 'must make a sufficient showing on each essential

5

element of the case for which he has the burden of proof.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Accordingly, the non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in the non-moving party's favor. *Shiver*, 549 F.3d at 1343. Even "where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from those facts," summary judgment may be inappropriate. *Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983). Here, the parties agree that the issue is one of law – the Court's interpretation of certain provisions contained in the Underwriters and Scottsdale policies.

    ii. **Analysis**

"In insurance coverage cases under Florida law, courts look at the insurance policy as a whole and give every provision its full meaning and operative effect." *See State Farm Fire & Cas. Co. v. Steinberg*, 393 F.3d 1226, 1230 (11th Cir. 2004) (internal quotation marks omitted). Under Florida law, courts examine insurance policies by starting with "the plain language of the policy, as bargained for by the parties." *Id.* (citing *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000)). "[P]rinciples governing the construction of insurance contracts dictate that when construing an insurance policy to determine coverage the pertinent provisions should be read *in pari materia*." *U.S. Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So. 2d 871, 877 (Fla. 2007). Unambiguous policy language controls, but if the language is "susceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage, the insurance policy is considered 'ambiguous,' and must be 'interpreted liberally in favor of the insured and strictly against the drafter who prepared the policy.'" *Id.* The insurer bears the burden of

proving that an exclusion of a policy precludes coverage. *See U.S. Concrete Pipe Co. v. Bould*, 437 So. 2d 1061, 1065 (Fla. 1983).

The duty to defend is broader than the duty to indemnify. *See Jones v. Fla. Ins. Guar. Asss'n, Inc.*, 908 So. 2d 435, 443 (Fla. 2005). "It is well settled that an insurer's duty to defend its insured against a legal action arises when the complaint alleges facts that fairly and potentially bring the suit within policy coverage." *Id.* at 442-443. "The duty to defend must be determined from the allegations in the complaint . . . and the insurer must defend even if the allegations in the complaint are factually incorrect or meritless." *Id.* at 443. "Any doubts regarding the duty to defend must be resolved in favor of the insured." *Id.* However, if the insurer has no duty to defend, "it necessarily follows that it ha[s] no duty to indemnify." *Burlington Ins. Co., Inc. v. Normandy General Partners*, 560 F. App'x 844, 847-48 (11th Cir. 2014) (citing *Fun Spree Vacations, Inc. v. Orion Ins. Co.*, 659 So. 2d 419, 421-22) (Fla. 3d DCA 1995)).

### 1. Defendants' Motion for Summary Judgment

Defendants argue that the allegations of the underlying complaint fall within the coverage provided by the parasail endorsement in Plaintiff's policy, and are not excluded by the watercraft exclusion in Plaintiff's policy—an argument Plaintiff does not appear to contest. Rather, Plaintiff makes the same argument in response to Defendants' summary judgment motion as it does in its own motion for partial summary judgment—that both Plaintiff and Defendant Scottsdale must respond on a co-primary, pro-rata basis by virtue of the "other insurance" clauses contained in both policies.

### a. Plaintiff's Duty to Defend

"Under Florida law, insurance contracts are construed according to their plain meaning." *Garcia v. Federal Ins. Co.*, 473 F.3d 1131, 1135 (11th Cir. 2006) (quoting *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005)). The "terms of an insurance policy should be taken and understood in their ordinary sense and the policy should receive a reasonable, practical and sensible interpretation consistent with the intent of the parties." *Siegle v. Progressive Consumers Ins. Co.*, 819 So. 2d 732, 736 (Fla. 2002).

Defendant argues that Plaintiff has a duty to defend because the policy's parasailing endorsement applies, and the policy's watercraft exclusion does not preclude coverage.

The parasailing endorsement provides the following:

SPECIAL ENDORSEMENT FOR PARASAIL OPERATIONS

Notwithstanding anything to the contrary contained herein, the coverages provided by Protection and Indemnity portion of this policy, and the General Liability portion, if applicable, shall in no case cover claims the assured shall become liable to pay on account of the loss of life or injury to, or illness of any swimmers, snorkelers, or divers while preparing to enter the water, or boarding the vessel at the conclusion of swimming, snorkeling or diving operations.

Parasail activities and operations, within the guidelines of the attached operations endorsement and warranty forms, are expressly covered by this insurance, including entering the water from the vessel and boarding the vessel from the water, prior to and subsequent to the activity of parasailing.

ECF No. [86-2] at 28. The applicable exclusion provides that the insurance does not apply to:

g. Aircraft, Auto or Watercraft

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or

8

> "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.
>
> This exclusion does not apply to:
> (1) A watercraft while ashore on premises you own or rent;
> (2) A watercraft you do not own that is:
>   (a) Less than 26 feet long; and
>   (b) Not being used to carry persons or property for a charge;
> (3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;
> (4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or
> (5) "Bodily injury" or "property damage" arising out of
>   (a) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or
>   (b) The operation of any of the machinery or equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment".

ECF No. [86-2] at 12-13.

The underlying complaint alleges that the death of the decedent occurred "while the parasail . . . was aloft and being towed by the Defendants, Waveblast II and/or Waveblast parasailing vessel." ECF No. [82-1] at 12. Defendant Sands Harbor argues that this occurrence falls under the parasailing endorsement, and under Florida law, the watercraft exclusion does not eliminate coverage for a number of reasons, including that applying the watercraft exclusion to parasailing activities renders Plaintiff's insurance policy illusory. *See* ECF No. [84] at 9.

"Under Florida law, 'if one interpretation looking to the other provisions of the contract and to its general object and scope would lead to an absurd conclusion, such interpretation must be abandoned, and that adopted which will be more consistent with reason and probability." *Interline Brands, Inc. v. Chartis Specialty Ins. Co.*, 749 F.3d 962, 966 (11th Cir. 2014) (quoting *Inter-Ocean Cas. Co. v. Hunt*, 189 So. 240, 243 (Fla. 1939)). "As more recently explained,

'when limitations or exclusions completely contradict the insuring provisions, insurance coverage becomes illusory.'" *Id.* (quoting *Purrelli v. State Farm Fire & Cas. Co.*, 698 So. 2d 618, 620 (Fla. 2d DCA 1997)).

Here, the Court finds that allowing Plaintiff to avoid coverage for a parasailing extension on the basis that it involved the use of a watercraft would be an absurd conclusion because parasailing necessarily involves it. The extension's language to "includ[e] entering the water from the vessel and boarding the vessel from the water, prior to and subsequent to the activity of parasailing," ECF No. [86-2] at 28, further indicates that the extension's language provides coverage during the parasailing activity itself. Providing an extension of coverage for parasailing activities except where it arises out of the use of watercraft is, indeed, "complete nonsense." *Purrelli*, 698 So. 2d at 620 (citation omitted). Such a reading would render the policy illusory, and the Court adopts the only reading consistent with reason and probability— that the watercraft exclusion does not preclude coverage for parasailing activities. Defendants' Motion for Summary Judgment with respect to Plaintiff's duty to defend is granted, and the Court finds that Plaintiff has the duty to defend Defendant Sands Harbor in the underlying lawsuit.

### b. Plaintiff's Duty to Indemnify

Though Plaintiff represents to the Court that the underlying suit has partially settled, *see* ECF No. [86-6] at 2, the record does not reflect any evidence that any resolution has taken place in the underlying suit with respect to liability—and Defendant has not indicated otherwise. Thus, the issue of Plaintiff's duty to indemnify is premature. *See Axis Surplus Ins. Co. v. Conravest Const. Co.*, 921 F. Supp. 2d 1338, 1344 (M.D. Fla. 2012). Defendants' Motion for Summary Judgment with respect to the duty to indemnify is denied.

### c. Conclusion

Defendants' Motion for Summary Judgment is accordingly granted in part and denied in part. The Court will now turn to the question of Plaintiff's and Defendant Scottsdale's duties to defend and indemnify Defendant Sands Harbor, the mutually insured—the precise subject of Plaintiff's Motion for Partial Summary Judgment.

### 2. Plaintiff's Motion for Partial Summary Judgment

Plaintiff's Motion for Partial Summary Judgment seeks a ruling that the "other insurance" clauses in Plaintiff's and Defendant Scottsdale's insurance policies are "mutually repugnant," and, thus, both insurance companies owe Defendant Sands Harbor, Inc. a defense on "a co-primary basis, pro rata according to policy limits." ECF No. [99] at 1. Defendant Scottsdale argues in response that even if Plaintiff is correct on the "other insurance" clause argument, Plaintiff must respond as a primary insurer, and Defendant Scottsdale as an excess insurer, due to the indemnification clause contained in the lease agreement between Defendant Waveblast II and Defendant Sands Harbor.

### a. Mutual repugnance and the "other insurance" clauses

Where policies contain an "'other insurance' clause which states that its policy will be excess over other collectible insurance[,] [t]he 'other insurance' clauses in the respective policies cancel each other out, which results in our apportioning the policies on a pro-rata basis determined by the policy limits in relation to the loss." *Allstate Ins. Co. v. Executive Car & Truck Leasing, Inc.*, 494 So. 2d 487, 489 (Fla. 1986). *See also Fireman's Fund Ins. Co. v. Tropical Shipping & Constr. Co.*, 254 F.3d 987, 1005 (11th Cir. 2001) ("the clauses are deemed mutually repugnant").

The "other insurance" clauses of both policies state that the insurance is excess over any other insurance where the loss arose "out of the maintenance or use of . . . watercraft to the extent not subject to Exclusion g." ECF Nos. [86-2] at 20-21; [86-5] at 62. That situation is present here—a woman died while parasailing, which involves the use of a watercraft. *See James River Ins. Co. v. Ground Down Eng'g, Inc.*, 540 F.3d 1270, 1275 (11th Cir. 2008) ("the term 'arising out of' is broader in meaning than the term 'caused by' and means 'originating from,' 'having its origin in,' 'growing out of,' 'flowing from,' 'incident to,' or 'having a connection with'") (quoting *Taurus Holdings, Inc. v. United States Fid. and Guar. Co.*, 913 So. 2d 528, 539 (Fla. 2005)). Initially, the "other insurance" clauses of both insurance policies were virtually identical. *Compare* ECF No. [86-2] at 20-21 *with* ECF No. [86-5] at 29-30. Scottsdale's "other insurance" clause, however, was amended to include an excess insurance provision that Plaintiff's policy does not have—subsection (4), which states that Scottsdale's insurance is excess where there is "valid and collectible insurance available to you under any other policy." ECF No. [86-5] at 2.

The parties disagree about the effect of this difference. Defendant Scottsdale argues that even if the excess clauses regarding losses arising out of the use of a watercraft cancel each other out, subsection (4) of the Scottsdale policy survives and renders the Scottsdale policy excess. *See* ECF No. [89] at 5 (citing *Keenan Hopkins Schmidt & Stowell Contractors, Inc. v. Cont'l Cas. Co.*, 653 F. Supp. 2d 1255 (M.D. Fla. 2009)). Plaintiff argues, however, permitting subsection (4) to survive the cancelling out of the watercraft excess insurance provisions would render the clause a "super excess" clause, which Plaintiff argues Florida law does not recognize. *See* ECF No. [99] at 4 (citing *AIG Premier Ins. Co. v. RLI Ins. Co.*, 812 F. Supp. 2d 1315, 1322

(M.D. Fla. 2011); *Am. Cas. Co. of Reading Pa. v. Health Care Indemn., Inc.*, 613 F. Supp. 2d 1310, 1318 (M.D. Fla. 2009)).

Defendant Scottsdale's reliance on *Keenan Hopkins Schmidt & Stowell Contractors, Inc.* is misguided.  There, the court was faced with two "other insurance" provisions.  One provided that "if other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this coverage part, this insurance is excess over any of the other insurance, whether primary, excess, contingent, or on any other basis."  653 F. Supp. 2d at 1264.  The other provided that:

> This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:
>
> 1.  That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work;"
>
> 2.  That is "Specific Perils" insurance for premises rented to you; or
>
> 3.  If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Coverage A (Section I).

*Id.*  There, the three contingencies in the second policy were not applicable to the loss, as the underlying complaint involved the faulty construction of a boardwalk.  As a result, the court found that the "other insurance" provision of the second policy was not applicable, the second insurance company served as a primary insurer, and the first insurance company's policy was in excess.  In this case, however, a contingency contained in the "other insurance" provisions of both policies applies, so the outcome and reasoning of *Keenan Hopkins Schmidt & Stowell Contractors, Inc.* is inapplicable.

Defendant Scottsdale has not provided the Court with any authority to indicate that the cancellation of "other insurance" clauses can occur under Florida law on a piecemeal basis—i.e.,

where similar "other insurance" clauses are triggered by the same contingency, the provisions specific to the contingency are removed and any other portions of an "other insurance" clause remain. Indeed, such a holding would imply that one "other insurance" clause has a higher degree of "excess-ness" over another. Florida law has not given effect to "super excess" clauses, and Defendant Scottsdale has not pointed the Court to any authority indicating otherwise. *See AIG Premier Ins. Co.*, 812 F. Supp. 2d at 1325 (rejecting argument that, under Florida law, one excess clause could be "excess to all other excess insurance"); *cf. Lumbermens Mut. Cas. Co. v. Allstate Ins. Co.*, 417 N.E.2d. 953, 955 (N.Y. 1980) (applying New York law, departing from general rule that each excess insurer contribute in proportion to its policy limit because one of the policies "specifically provided coverage in excess of all other coverage available, including excess coverage."). Here, the Court is faced with "classic 'other insurance' clause[s]" because "both policies state that they will not serve as primary insurance where there is other applicable insurance." *Am. Cas. Co. of Reading Pa.*, 613 F. Supp. 2d at 1319. Thus, the "other insurance" clauses are mutually repugnant and cancel each other out in entirety, "which results in . . . apportioning the policies on a pro-rata basis determined by the policy limits in relation to the loss."[1] *Allstate Ins. Co.*, 494 So. 2d at 489.

### b. The effect of the indemnification contained in the lease

Defendant Scottsdale brings the Court's attention to a lease agreement with Defendant Sands Harbor (the Lessor) and Defendant Waveblast II (the Lessee), which provides:

> **TWENTY-SECOND:** Lessee agrees to save Lessor harmless from and to indemnify Lessor against any loss, damage or expense suffered or sustained by Lessee or any other person whatsoever resulting from damage or injury to any

---

[1] Defendant Scottsdale also argues that Plaintiff's "other insurance" clause may be disregarded because Waveblast was the "actively negligent party" because it "actually conducted the parasail excursion." ECF No. [89] at 5-6 (citing *Allstate Ins. v. Fowler*, 480 So. 2d 1287 (Fla. 1985)). Notwithstanding the various ways in which *Fowler* is distinguishable from this case, the Court declines to address this argument because the record does not reflect that any findings with respect to liability have been made in the underlying case.

> property and/or death or injury to any person upon or about the premises from any cause whatsoever, and agrees to procure at its own expense from a nationally known and solvent insurance company public liability insurance for the benefit or Lessor in the sum of One Million ($1,000,000.00) Dollars for damages resulting to one person and One Million ($1,000,000.00) Dollars for damages, injuries, or death(s) resulting from one casualty and Fifty Thousand ($50,000.00) Dollars property damage and to keep such insurance in force during the term of this Lease, to deliver evidence of such liability insurance to Lessor, and to deliver the policy or policies to Lessor on demand.
>
> If Lessor should be sued as a defendant or joined in any action arising from Lessee's occupancy of the premises or activities thereon (other than Lessor's attempts to lease to another Lessee), Lessee or its insurer shall appear and defend such action on behalf of the Lessor. Lessee has inspected the premises prior to signing this Lease and the foregoing provision shall extend to any alleged hazardous conditions on or about the premises let to the extent known or otherwise readily ascertainable, whether known or not on the date of inspection.

ECF No. [82-1] at 56-57. Defendant Scottsdale argues that under Florida law, the lease agreement's indemnity clause shifts primary responsibility for the entire loss to the carrier (Plaintiff) for the indemnitor (Waveblast II)—notwithstanding the "other insurance" provisions. *See* ECF No. [89] at 8 (citing *Continental Cas. Co. v. City of S. Daytona, Fla.*, 807 So. 2d 91 (Fla. 5th DCA 2002); *Am. Home Assurance Co. v. City of Opa Locka*, 368 So. 2d 416 (Fla. 3d DCA 1979); *Crabtree v. Hertz Corp.*, 461 So. 2d 981 (Fla. 1st DCA 1984)). Plaintiff argues that the lease's indemnification clause does not affect Plaintiff's status with respect to its coverage of Defendant Sands Harbor because the lease agreement is between Defendant Sands Harbor and Defendant Waveblast II (not Waveblast), and Waveblast II is not a named insured on Plaintiff's policy.

Only one of the cases Defendants cite in support of their argument actually involves the issue of how indemnification in a contract affects the operation of "other insurance" clauses—*Crabtree, supra*. *Crabtree*, however, is clearly distinguishable. The indemnification involved in that case did not override competing "other insurance" clauses because one of the competing

15

insurance agreements did not have an "excess" insurance clause. Instead, one of the agreements specifically stated that it was to be considered the primary source of coverage. Thus, the court explained, the insuring agreements "with respect to its primary liability, vis-à-vis other insurance available to the lessee, will be enforced in accordance with the intention of the parties as clearly expressed in the contract between lessor and lessee." *Crabtree*, 461 So. 2d at 984.

Though not involving competing "other insurance" clauses, *City of South Daytona*, *supra*, a case to which both parties cite, is instructive. There, a little league baseball association contracted to use the City of South Daytona's facilities to host little league events. The league promised to assume responsibility for any and all claims which arise from the use of the city's facilities, to defend and indemnify the city, and to secure an insurance policy naming the city as a co-insured. A baseball coach was hit in the face by a baseball and sued the city and the league. The insurance carriers for the city and the league each moved for summary judgment in a declaratory relief action to determine the parties' rights under the respective policies.

The insurer for the league argued that the insurer of the city—not the city itself—was the real party in interest, and the insurer had no right of subrogation against the insurer of the league under Florida law, citing *Argonaut Insurance Company v. Maryland Casualty Company*, 372 So. 2d 960 (Fla. 3d DCA 1979), and *Continental Casualty Company v. United Pacific Insurance Company*, 637 So. 2d 270 (Fla. 5th DCA), *rev. denied*, 645 So. 2d 451 (Fla. 1994). Rejecting this argument, the court found that *Argonaut* and *Continental* were inapplicable "because they addressed the issue of equitable subrogation among insurers where there was no contract of indemnification between the insured parties," and the league and the city had "a specific and contractual obligation of indemnification." *City of S. Daytona*, 807 So. 2d at 93. Here, however, no specific and contractual obligation of indemnification existed between Plaintiff's insured—

Defendant Waveblast—and Defendant Sands Harbor because the applicable lease named Defendant Waveblast II as the lessee and indemnitor, *see* ECF [82-1] at 53, and Defendant Waveblast II is not a named insured under Plaintiff's policy. *See* [86-2] at 1, 4. Further, the issue here is one of the effect of the policies' "other insurance" clauses, not rights of equitable subrogation.

Defendants argue that, for the purpose of determining the duty to defend, the Court is bound by the allegations in the underlying complaint, which alleges that Waveblast and/or Waveblast II leased the premises for the purpose of conducting parasail operations—"regardless of which one of these two entities actually occupied the premises and conducted the operations at issue." ECF No. [89] at 7 n.1. However, treating the allegation that Waveblast leased the premises from Defendant Sands Harbor as true does not mean the Court must ignore the fact that the indemnification clause—upon which Defendants rely in support of their argument to disregard the policies' "other insurance" clauses—is contained in a lease to which Waveblast is not a party.[2] Thus, the indemnification clause in the lease has no effect on the operation of the "other insurance" clauses.[3]

### III.     Conclusion

The Court concludes that Plaintiff has a duty to defend Defendant Sands Harbor in the underlying lawsuit, and Plaintiff has breached its contract with Defendant for failing to do so.

---

[2] The record is not clear with respect to who is the insurer for Waveblast II. In Waveblast's application for insurance, it stated that Waveblast is engaged in a similar business operation under another business name—Waveblast II—and that the insurance carrier for Waveblast II was "IWSF." *See* ECF No. [86-2] at 66. Waveblast II was not listed as an additional insured on the application, though the record also contains a "Recreational Rental Supp Application" for Waveblast II. *See id.* at 68.

[3] Defendants argue that even if the lease agreement does not provide indemnification, Defendant Sands Harbor may have a claim for common law indemnify against Waveblast. In that instance, Defendants argue, "the Lloyds policy will clearly respond on a primary basis and the Scottsdale policy will be excess over any coverage available under the Lloyd's policy." ECF No. [89] at 9. The Court declines to address this issue because, as Defendants explain, "Waveblast's actual obligation to indemnify Sands Harbor has not yet been determined in the underlying suit." *Id.*

The Court makes no ruling regarding Plaintiff's duty to indemnify because the record does not reflect that liability has been determined in the underlying lawsuit.  Finally, the Court concludes that Plaintiff and Defendant Scottsdale Insurance Company have the duty to defend Defendant Sands Harbor in the underlying lawsuit—apportioning the policies on a pro-rata basis determined by the policy limits in relation to the loss. The Court makes no conclusions with respect to the duty to defend or indemnify Defendants Waveblast and Waveblast II.

Therefore, it is hereby **ORDERED AND ADJUDGED** that:

1. Defendants Scottsdale Insurance Company and Sands Harbor, Inc.'s Motions to Strike, **ECF Nos. [93]** and **[95]** are **DENIED**;

2. Defendant Sands Harbor, Inc.'s Motion for Summary Judgment, **ECF No. [84]**, is **GRANTED IN PART** and **DENIED IN PART**;

3. Plaintiff's Partial Motion for Summary Judgment, **ECF No. [86]**, is **GRANTED**;

4. Having addressed all issues of law presented for the Court's determination, the parties shall jointly file, **no later than January 19, 2015**, a summary of all issues remaining for the trial scheduled on January 26, 2015.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 14th day of January, 2015.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record